Public Employee Labor Relations Board
No. 2005-264

APPEAL OF THE CITY OF MANCHESTER
(New Hampshire Public Employee Labor Relations Board)

Argued: January 11, 2006
Opinion Issued: February 24, 2006

*City Solicitor's Office*, of Manchester (*Daniel D. Muller, Jr.* on the brief and orally), for the petitioner.

*McKittrick Law Offices*, of North Hampton (*J. Joseph McKittrick* on the brief and orally), for the respondent.

GALWAY, J. The petitioner, the City of Manchester (City), appeals a New Hampshire Public Employee Labor Relations Board (PELRB) ruling that the City committed unfair labor practices (ULPs) in violation of RSA 273-A:5, I(a) and (g) (1999). We reverse.

The record supports the following facts. The respondent-appellee, Marc J. Desilets, was employed by the Manchester Police Department

(Department) as a regular full-time police officer from January 10, 1988, until November 10, 2003. The Manchester Police Patrolman's Association (Union) is the exclusive bargaining representative for all regular full-time police officers employed by the City. The City and the Union were parties to a collective bargaining agreement (CBA) in effect from July 1, 2002, to June 30, 2004.

In response to a citizen complaint made against Desilets on or about October 23, 2002, the Department initiated an internal affairs investigation. In the course of that investigation, Desilets was interviewed by investigating officers on October 30 and 31, 2002. Desilets alleges that the Department either interfered with or denied him the opportunity to obtain Union representation during both interviews.

On November 3, 2003, the Department issued a letter of disciplinary intent charging Desilets with two counts of untruthfulness arising from the October interviews, one count of conduct unbecoming an officer, and one count of unlawful conduct. The letter recommended that Desilets' employment be terminated. After a disciplinary hearing on November 10, 2003, Desilets' employment was terminated.

On December 20, 2003, Desilets initiated a grievance pursuant to article 7 of the CBA, alleging he was terminated without just cause in violation of section 3.1 of the CBA. The grievance was processed and the Union filed for arbitration. The arbitration hearing was scheduled for June 25, 2004.

On December 22, 2003, Desilets filed a ULP complaint with the PELRB against the City, alleging that the Department violated RSA 273-A:5, I (a) & (g) by obstructing or interfering with his Union representation during the October investigative interviews. On January 28, 2004, Desilets also filed a ULP complaint against the Union. The City moved to dismiss the complaint against it, asserting that the PELRB lacked jurisdiction because the CBA provides for final and binding arbitration, and Desilets had raised the same issues in his grievance.

The PELRB conducted a hearing in May 2004, at which it considered the City's motion to dismiss and Desilets' ULP complaints against both the City and the Union. By order dated October 22, 2004, the hearing officer denied the City's motion to dismiss, finding that: (1) the PELRB has primary jurisdiction of all violations of RSA 273-A:5, pursuant to RSA 273-A:6, I; and (2) the denial of an employee's *Weingarten* rights, *see NLRB v. Weingarten, Inc.*, 420 U.S. 251 (1975), or, more specifically, the denial of the right to a union representative during an investigative interview, constitutes a ULP and violates RSA 273-A:5, I (a). While acknowledging that *Weingarten* rights are often litigated in a just cause grievance arbitration proceeding, the hearing officer concluded that the PELRB has

the authority to determine "on a case-by-case basis ... whether or not a matter is appropriate for arbitration."

Having concluded that it had jurisdiction to consider Desilets' ULP complaint, the hearing officer determined that the City violated Desilets' *Weingarten* rights during both investigative interviews, and that the Union violated its duty of fair representation during the October 30 interview. The Union did not appeal the ruling against it.

On November 19, 2004, the City timely requested that the PELRB review the hearing officer's decision, asserting that the decision was: (1) unlawful, unjust, and unreasonable; and (2) based upon factual misrepresentations, and/or omissions. By order dated January 6, 2005, the PELRB sustained the hearing officer's decision. After the PELRB denied the City's motion for rehearing, the instant appeal followed. The arbitration hearing on Desilets' just cause grievance has been postponed, at the City's request, pending the outcome of this appeal.

"When reviewing a decision of the PELRB, we defer to its findings of fact, and, absent an erroneous ruling of law, we will not set aside its decision unless the appealing party demonstrates by a clear preponderance of the evidence that the order is unjust or unreasonable." *Appeal of Laconia Sch. Dist.*, 150 N.H. 495, 496 (2004); *see* RSA 541:13 (1997).

As a preliminary matter, we note that both parties and the PELRB refer to "*Weingarten* rights" in the context of this appeal. In *NLRB v. Weingarten, Inc.*, the United States Supreme Court held that the language of section 7 of the National Labor Relations Act accords employees the right to union representation during an investigatory interview that the employee reasonably believes might result in disciplinary action. *Weingarten*, 420 U.S. at 267. The Court held that a denial of union representation during such an interview constitutes an unfair labor practice in violation of section 8(a)(1) of the National Labor Relations Act. *Id.* at 252. No party argues that Desilets was not entitled to this right. Therefore, for the purposes of this appeal, we will assume, without deciding, that Desilets had a right to union representation during the October investigatory interviews under *Weingarten*.

On appeal, the City first argues that the PELRB lacked jurisdiction to consider Desilets' ULP complaint because Desilets had already initiated a grievance encompassing the same claims that was subject to final and binding arbitration under the CBA. Desilets counters that the PELRB properly determined that it had jurisdiction to consider the alleged violations of his *Weingarten* rights because his ULP complaint alleged violations of RSA 273-A:5 and was not based upon provisions in the CBA.

■ "A CBA is a contract between a public employer and a union over the terms and conditions of employment." *Appeal of Hillsboro-Deering School Dist.*, 144 N.H. 27, 30 (1999) (citations omitted). When parties enter into a CBA, they are obligated to adhere to its terms, which are the product of their collective bargaining. *Id.* Every CBA must contain a workable grievance procedure. RSA 273-A:4 (Supp. 2005). The extent of the parties' agreement to arbitrate determines the arbitrator's jurisdiction, and "[t]he overriding concern is whether the contracting parties have agreed to arbitrate a particular dispute." *Appeal of Police Comm'n of City of Rochester*, 149 N.H. 528, 534 (2003) (quotations and citations omitted). In the context of a just cause grievance, the arbitrator also has the authority to consider the underlying issues and surrounding circumstances necessary to interpret and apply the express provisions of the CBA and reach a final decision. *See Paperworkers v. Misco, Inc.*, 484 U.S. 29, 34 (1987) (identifying seven criteria considered in the context of a just cause grievance).

■ While the PELRB has primary jurisdiction of all ULP claims alleging violations of RSA 273-A:5, *see* RSA 273-A:6, I, it does not generally have jurisdiction to interpret the CBA when the CBA provides for final binding arbitration. *Appeal of State of N.H.*, 147 N.H. 106, 108 (2001). Absent specific language to the contrary in the CBA, however, the PELRB is empowered to determine as a threshold matter whether a specific dispute falls within the scope of the CBA. *Appeal of Police Comm'n of City of Rochester*, 149 N.H. at 533. Thus, as a threshold matter, the PELRB is empowered to interpret the CBA to the extent necessary to determine whether a dispute is arbitrable. *Appeal of State*, 147 N.H. at 109.

We first consider whether the just cause grievance and the ULP complaint encompass the same substantive issue. In his demand for arbitration, Desilets alleged that the Department: (1) had terminated his employment without just cause; and (2) had violated his "right to be represented during a disciplinary interview." Similarly, his ULP complaint alleged that the Department denied or interfered with his Union representation during both October 2002 investigative interviews. Thus, both the just cause grievance and the ULP complaint alleged substantively identical violations of Desilets' *Weingarten* rights. Furthermore, they both arose during an investigation that ultimately resulted in Desilets' termination from the Department.

■ In ruling that it had jurisdiction to consider Desilets' ULP claim while the just cause grievance was awaiting arbitration, the PELRB, in essence, was deciding the threshold issue regarding the arbitrability of the

alleged violations of Desilets' *Weingarten* rights. In this case, the CBA is silent regarding the arbitrator's authority to determine the arbitrability of a disputed issue. Therefore, the PELRB had the authority to determine, as a threshold matter, whether an alleged violation of Desilets' *Weingarten* rights fell within the scope of the CBA and was appropriate for arbitration. *See Appeal of Police Comm'n of City of Rochester*, 149 N.H. at 533.

■ We are not persuaded by Desilets' assertion that alleging a violation of RSA 273-A:5 is sufficient, in and of itself, to preclude a determination that the issue falls within the scope of the CBA. RSA 273-A:6, I, grants the PELRB jurisdiction of all violations of RSA 273-A:5. However, when a grievance initiated under a CBA and a ULP complaint allege substantively identical claims, authority rests with the PELRB to determine the threshold matter of arbitrability of the claim. *See Appeal of Laconia Sch. Dist.*, 150 N.H. at 496 (upholding PELRB ruling to proceed to arbitration when the substance of an arbitration demand and a ULP complaint were identical). This determination requires the PELRB to interpret the CBA to the extent necessary to determine whether the alleged violation of Desilets' *Weingarten* rights was arbitrable. *See Appeal of State*, 147 N.H. at 109. Because the parties' agreement determines the arbitrator's jurisdiction over the subject matter of a dispute, we look to the relevant portions of the CBA to determine whether the PELRB determination of arbitrability was correct. Our review is *de novo. Appeal of City of Nashua*, 132 N.H. 699, 703 (1990).

■ Here, the underlying allegations regarding Desilets' *Weingarten* rights arose in the context of the investigation of a "disciplinary action" under section 3.1 of the CBA. Section 3.1 states that "no disciplinary action shall be taken against an employee except for just cause." The CBA sets forth a multi-step grievance procedure to be followed for claims "arising out of the application or interpretation" of the CBA. *See* AGREEMENT BETWEEN THE CITY OF MANCHESTER, N.H. AND THE MANCHESTER POLICE PATROLMAN'S ASSOCIATION, Article 7, Section 7.1 (A) (July 1, 2002-June 30, 2004). Pursuant to article 7, section 7.6, the CBA provides for final and binding arbitration of grievances arising under the terms of the CBA. The express language of section 7.6 allows the arbitrator to consider and decide "what is necessary for the interpretation and application of express provisions of this agreement." Therefore, Desilets' just cause grievance proceeding necessarily encompasses issues pertaining to the propriety of the underlying investigation. *See Misco*, 484 U.S. at 34 (specifically identifying seven criteria an arbitrator may consider during just cause discipline cases, including the timing and fairness of the investigation). To conclude otherwise would unreasonably limit the

arbitrator's ability to interpret and apply the just cause provision in section 3.1 of the CBA. Therefore, we conclude that the CBA provides for final and binding arbitration of alleged violations of Desilets' *Weingarten* rights in the context of his just cause grievance.

In ruling that it had jurisdiction to consider Desilets' ULP complaint while the just clause grievance was proceeding to arbitration, the PELRB incorrectly concluded that "it is not necessary . . . to interpret the parties' CBA." Furthermore, instead of considering and interpreting the language of the CBA, the PELRB incorrectly concluded that arbitration would not be appropriate in this instance because: (1) "there is no evidence at this stage that the *Weingarten* claim has been raised within the context of the arbitration proceeding, nor is there any concrete assurance that the issue would be fully addressed in that forum"; (2) an inherent conflict existed since the Union would be required to arbitrate Desilets' *Weingarten* issue based upon its own actions or inactions; and (3) Desilets' *Weingarten* claim was statutory, pursuant to RSA 273-A:5, I (a) & (g), and did not require an interpretation of the just clause provision of the CBA.

For reasons previously stated, we find no merit to these conclusions. In order to determine the threshold matter of the arbitrability of Desilets' *Weingarten* rights, the PELRB was required to interpret the CBA. *See Appeal of State*, 147 N.H. at 109. In the context of the just cause grievance, the CBA encompassed the dispute regarding alleged violations of Desilets' *Weingarten* rights during the two October 2002 interviews. Furthermore, in its determination, the PELRB acknowledged that *Weingarten* rights are often adjudicated in arbitration within the context of just cause grievances. Thus, we conclude the PELRB erred when it determined that the *Weingarten* rights were not arbitrable in the instant case.

Furthermore, we are also not persuaded that the Union's representation of Desilets in the just cause grievance presents such an inherent conflict that it precludes arbitration of this issue. At this juncture, Desilets does not have a pending claim against the Union and the Union has complied with all the requirements of the grievance procedure. Moreover, by initiating the just cause grievance, Desilets indicated his intent to be bound by the terms of the CBA, including union representation during the arbitration proceeding.

The primary purpose of the arbitration process is expeditious and economical dispute resolution. *Appeal of Police Comm'n of City of Rochester*, 149 N.H. at 535. The legislative purpose behind RSA chapter 273-A is to foster harmonious and cooperative relations between public employers and their employees by, among other things, establishing a PELRB "vested with broad powers to *assist* in resolving disputes between

government and its employees." Laws 1975, 490:1, III (emphasis added). Allowing Desilets to contravene the underlying purpose of arbitration, by raising a substantive issue before the PELRB after agreeing to submit it to final and binding arbitration under the CBA, would not be in accord with the legislative purpose of RSA chapter 273-A. *See Appeal of Police Comm'n of City of Rochester*, 149 N.H. at 535.

 Accordingly, we conclude as a matter of law that the PELRB erred by determining that Desilets' ULP complaint in this case was not arbitrable and by exercising jurisdiction over the ULP complaint while the just cause grievance was proceeding to arbitration. In light of our ruling, we need not address the City's remaining arguments.

*Reversed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.